All rise, please. The Honorable Court, the United States Court of Appeals for the First Circuit is now in  All persons having a visit before this Honorable Court may draw near, give their attendance, and they shall be heard. God save the United States of America and this Honorable Court. You may be seated. Court is in session. Yes, go ahead. Today's cases will be called as previously announced and the times will be as allotted. The first case today is 24-1665 and 24-1666, the United States v. Garcia-Oquendo. Counsel, your appearance, please. Good morning. May it please the Court, I am AFPB Celso Perez arguing on behalf of Mr. Garcia-Oquendo. May I reserve two minutes for rebuttal? You may. Thank you. Revocation proceedings are not an evidentiary free-for-all. District courts must balance good cause and reliability before admitting hearsay statements. Here, over counsel's objections, the district court repeatedly misunderstood the law and balanced nothing. This was error that affected both the revocation finding and the sentence imposed. This Court should vacate the judgment below. I'd like to begin with the discussion of the revocation error and then move on to the sentencing. If we assume the district court didn't quite call it right, didn't do the appropriate balancing test, as you argue in your brief, it's still hard to figure out where the prejudice is because it seems like there was a lot of evidence that still supported the court's finding, including an admission from your client that he paid somebody to engage in one of these transactions. So, Your Honor, I'd like to take you through the harmlessness analysis going right into what I gather your question gets us at. And our position is that, no, there was prejudice. Number one, there was no direct evidence of a missing element in this case, which we variously describe as either his lack of authority or lack of authorization to use or some sort of scheme to defraud. So that's the missing element. Now, the government on appeal argues that there was circumstantial evidence that allows us to get there. But this argument is built on a piling, an impermissible piling of inferences to get from point A, the circumstantial evidence, to point B, the missing element. And the government points to several categories of evidence, the photographs, the addresses, the reverse payments. Each of these categories relies on either an impermissible piling of inferences or an unreasonable inferences to go from A to B. And I can take Your Honor through a number of them. So the photographs are an example. I can't recall if you alluded to them directly, but there are a number of photographs in the record. They show that Mr. Garcia Oquendo took out the withdrawals. And they show that he was at the ATM. Now, the government would have the court believe that because in one of these photographs, for example, there was a third party, and I think that's what Your Honor was referring to in terms of the admission. There was an admission that a third party did take a withdrawal. But there is nothing to connect the photograph of this third party to the missing element, the scheme to defraud. As to one of the transactions, I thought there was evidence of Garcia paying this other person to assist in the transaction. Is that wrong? There is an admission that Mr. Garcia, in prior instances, had paid this individual to run errands for him, or that this individual assisted him in running errands. Counsel, I thought it was more specific than that. I thought he had admitted that he paid this individual $20 to go do the ATM withdrawal for him. Is that wrong? I would have to double-check, Your Honor, and I don't want to misstate the record. But even if that is what's in the record, that he paid someone $20, our argument remains that to get from the fact that he paid someone $20 to run an errand to the missing element being he lacked authorization to use the cards, or that somehow there was some scheme to defraud, there is still an inferential leap that's unwarranted. Counsel, I think, though, what I'm struggling with is you're looking at each of the pieces of evidence separately, and I think for us what we have to do is analyze whether putting all the circumstantial evidence, as you call it, together, whether it was still unreasonable for the district court to conclude by a preponderance that he lacked authorization. And so I think when we put everything together, why is it an unreasonable inference that the best explanation for all of these, you know, paying somebody $20 to use an ATM, the fact that the transactions triggered the bank's fraud protocols, the fact that he opened these accounts online, you know, you put all of it together, why is it not reasonable to conclude that it was fraudulent? So respectfully, Your Honor, because this is a situation where the sum is not greater than the parts, and so if we take each of these, there has to be an impermissible inferential leap. In the reverse payments, in the photographs, in whatever the categories are. And so we cannot then just lump it all together and say, well, we can make the inferential leap, because each of those. That's not right. We do look at the evidence cumulatively, and you're not objecting to the reliability of the information other than the fact that the two what you would call purported victims didn't show up. There was also one piece of evidence offered by the probation officer where he explained he had spoken to Ortega on the phone, and he had indicated that he didn't authorize Garcia to do anything for him. And that was not objected to. Respectfully, it was not objected to below, and our position is that in that particular instance, because the objection had already been denied so many times to counsel, that's inexcusable in terms of that's the one instance where she did not object to it. She objects to that repeatedly over the course of the multiple hearings. Just on two different questions. One is on the violation. If I understand your argument with respect to the violation finding, since you're saying there was a Rule 32 error by not doing the balancing, am I right that your position is that the question is not whether it was reasonable to find a violation, but whether since the finding was predicated in part on the testimony that you say was not permissibly considered under Rule 32, that the question is whether on this record was it harmless to have that violation? Do you follow? I didn't follow the full question, Your Honor. If there had been a finding that did not involve reliance on testimony that should have been excluded under Rule 32, that there had been a violation as to at least one of the transactions, then the question would be do we have any basis for overturning that finding. But as I understood it, your argument is that's not the question for us. The question for us is since there was a Rule 32 violation because the finding was predicated in part on testimony that should have been excluded, the question is does what remain strong enough not to support a finding but to compel the finding. Correct, Your Honor. And your contention is it doesn't compel that finding because of the various inferences. Correct, Your Honor. So if you have some case, because it's not the case that circumstantial evidence can never compel a finding, so what is it about this circumstantial evidence that you're saying is so weak or weak enough that even though it would support the finding, it doesn't compel it? So the key to our argument there is that each of these categories of impermissible, excuse me, each of these categories of circumstantial evidence depends on either unreasonable inferences or some sort of piling of inferences to get to that finding. And I take it the point is that piling is enough that we should vacate if the district court wants to make that finding based on that circumstantial evidence, that's then a different case than the case that we have here, which is the finding was made based on a Rule 32 error, at least in part. Correct. Okay. On the second, on the sentencing piece of it. Thank you. Yes. As I understand it, the district court based the determination of the length, it's kind of hard to use the right English language here, the length of the revocation, the length of the time that they're going to have to continue to serve in prison as a consequence of the revocation. Correct. On both the Castro and the Ortega transactions. Yes, and that's 8192. And as I understand it, your position is with respect to the Castro transaction, there is less evidence of it being unauthorized than with respect to Ortega. Do I have it backwards? So our position is twofold. If the court applies 32.1. I realize you have to apply it. As a sentencing, we have the whole. I got that. If it applies 32.1, it's clear, no balance. And then as to the harmlessness on that, since the district court there based the amount of time that your client would have to serve in consequence of the revocation on two violations rather than one, to find it harmless, we have to find that each of those findings has such strong evidence behind it that it was harmless. Exactly. And as between the two, my understanding was you were saying that the evidence was potentially weaker as to one than the other.  As to Castro, our argument is if we go just on trustworthiness or leaving balancing aside just on trustworthiness, all we really have is the statement. And what's that statement? That the, I believe it was Feliciano, states she told me she did not authorize. But we do have the evidence. And did not. But we do have the, there's no evidence of him being authorized. If we take that statement out, there's no evidence.  But all we have on your view then is just he made the transaction. She, yes. Garcia made the transaction, and that doesn't show you whether she was authorized or not. Correct. And there's just not enough to support that, so we'd have to vacate. Preponderance of the, correct. Okay. Anything further? No. Thank you. Good morning, Your Honors. May it please the Court. Maria Lutra for the Government. The Court should affirm Mr. Garcia's revocation sentence because first, as to the revocation, there was sufficient evidence on this record, apart from the out-of-court statements, to find that Mr. Garcia But sufficiency is not our standard for harmlessness. Sufficiency is not our standard for harmless error. There was more than enough evidence on this record to support this record. So how much does there have to be in a preponderance, under a preponderance standard? It's more likely than not. Correct. But it can't be just that's not enough because that would just be sufficient. So when there's an error, how strong does the evidence have to be to compel a finding that, by a preponderance, the violation occurred? And the evidence here supports that finding. Even assuming there was an error in admitting the out-of-court statements, there was enough evidence here on the record. And here, indeed, the District Court here If I ask it this way, if the District Court had found otherwise, and the District Court said, look, the government didn't put any proof of there not being authorization, would that have been reversible error as a finding? I don't know the answer to that question. Based on the facts of this case and what the District Court did here, the District Court explicitly mainly referenced this other evidence in its findings. But it didn't rely solely on that evidence, did it? It did not reference the out-of-court statements in its findings. As pages 173 to 176 demonstrate, it went through all the other evidence. It discussed the free in-court testimony of the free witnesses. The District Court stated explicitly that these free in-court witnesses consistently identified Garcia. It then went on to discuss the documentary evidence. It discussed the ATM images. It discussed that Mr. Garcia was clearly shown withdrawing money from both of the victims' credit card accounts. And not only that, but the District Court explicitly noted that Mr. Garcia had made a self-incriminating statement. When Mr. Garcia was shown another individual making the withdrawal, Mr. Garcia stated that he had paid this individual money. This individual was an addict from his neighborhood gas station. He had paid that individual money to make these transactions on his behalf. And that is what the District Court specifically pointed out in its findings of a violation. And then, before the District Court was also the evidence of the applications that were made online, as opposed to Mr. Garcia's own application that was made in person in a local bank branch. And the application showed Mr. Garcia's contact information in the applications themselves. It was the same phone number. It was the same P.O. box address as Mr. Garcia himself had listed on his own application. But not only that, Mr. Garcia admitted upon arrest that that was his own P.O. box address. And also the probation officer pointed out that that same address Mr. Garcia provided to the probation officer when he notified the probation officer of a change of address. Counsel, I guess another way that I've been thinking about this is, and Judge Barron also asked a similar question, there wasn't really any evidence that in any way would suggest authorization. In other words, there's no indication that there was a relationship between Garcia and the victims, that they were business partners or relatives. There was just nothing to explain why suddenly these accounts would have been opened online in Garcia's name and then all of the other pieces of information that you talked about. There was no suggestion anywhere that there was a relationship? No, there was no suggestion anywhere that there was any relationship. Mr. Ortega was a 49-year-old male. Ms. Castro was, I believe, a 79-year-old female. There was an indication that there was any relationship. However, the applications notified or stated the same physical address for both of them. And again, there was no indication of any relationship between them or Ms. Castro. The transactions themselves triggered the bank's fraud protocols, right? Can you explain a little more what exactly? I'm still not entirely clear with the reverse transaction. What does that actually mean? What happened here is how this case even came about is the first bank, in effect, had red flags about these transactions. There were payments made to these two credit cards, Ms. Castro's and Mr. Ortega's credit cards, from the same Banco Popular and Oriental Bank accounts. And these payments were made to the credit cards. And then once the Banco Popular and Oriental Bank account owners notified these as being unauthorized, the payments reversed back. And so that is how the first bank ended up with such a high loss because these payments allowed these credit cards to be used to a higher limit than they actually originally were assigned as a limit. And that's how the first bank started an investigation, and that's how they ended up identifying Mr. Garcia because his name was in the applications, his name was the authorized user, he was the one withdrawing the money from the ATM machines, and so forth. And just to clarify, you're not contesting that there was, in fact, a Rule 32.1 error at the revocation? No, no, we are not contesting that. As to the violation? As to that there was no Rule 32.1. And on the Castro transaction, unlike the Ortega transaction, where there's the evidence of him paying somebody who was the addict to do the transaction, for the Castro transaction the evidence is just that Garcia himself did the transaction, is that right? I believe so. I know that that person that was hired did multiple transactions, but I don't know if the testimony went into if the transactions were actually both. So the evidence that would support a preponderance of a violation in the Castro transaction is all the circumstances you described above about the unusual, the factors that Garcia is doing it, and the unusual way he's filling out applications and the like relative to how it normally was done. Is that the idea? Correct, and maybe I'll go more into that evidence too. For Ms. Castro's application, it was the same phone number, it was the same P.O. Box address as Mr. Garcia himself had used. And that same phone number was in fact one of the phone numbers that was mainly used to make these unauthorized transfers from the Banco Popular account and from the Oriental account. So there is a lot here besides just paying someone to make these transactions on Mr. Castro's behalf, Mr. Garcia's behalf, I'm sorry, to have more than enough evidence here to support the district court's violation finding. And on the question of whether the Rule 32 right to confront the witness applies to what you're calling the sentencing, I wasn't following why we would distinguish the violation determination from what you're calling the sentencing. As I read the Rule, it just says revocation hearing, and then it has a list of things that are supposed to happen at a revocation hearing. This was the revocation hearing, wasn't it? There was a revocation hearing, and then two months later, that's the sentencing for the revocation. Well, when you call it the sentencing, though, I'm not sure that's an accurate term and whether that is just the revocation hearing. It can happen all at the same time, can't it? That's true. It can happen all at the same time. And so typically a sentence is you commit a crime, we're going to impose a new sentence for you. The sentence was imposed for the crime. The only question is whether to revoke. So it's not really a new sentencing. It's just the determination of the revocation. And if that weren't the case, it wouldn't really make a lot of sense for that last provision to talk about mitigation evidence. Because mitigation wouldn't be relevant to a violation. It's only relevant to what's going to result from the revocation. A full revocation, you just go for the full sentence you've already gotten. Now we're just determining, essentially, are we going to mitigate the revocation? Why isn't it just the circuits that have held, that's all just the same part of the revocation hearing? There is no separate sentencing. That's just a colloquial term we use, but it's not accurate in this context. The government's position is that this court should follow the reasoning in Ruby. And as Ruby pointed out, Rule 32.1 was enacted as a result of Morrissey. And Morrissey's analysis or focus is really narrow. It focuses on the violation and determination whether to revoke. And it doesn't discuss anything beyond that in terms of whether there should be any heightened standard for hearsay at the sentencing in considering how long the sentence should be versus finding a violation of revocation. I see that my time is up. Just in terms of sentencing, we've still said that the evidence being considered should be reliable, haven't we? That is correct, Your Honor. That is exactly what I wanted to get with my answer. Even before Morrissey, there was established case law, like in Williams in Supreme Court, that stated that hearsay can be considered at sentencing. And this court has numerous times found that hearsay can be considered as long as it has sufficient initial reliability. And neither Morrissey or Rule 32.1 explicitly state, and it does not state explicitly anything. Rule 32 gives you a right beyond reliability, which is the right to the balancing and the good cause about availability and the like, right? It does mention... At least in the violation context. You agree with that, right? So the question is, does that same right extend to the determination of how long the sentence will be in consequence of the revocation? Right. How much time you have to continue to serve in consequence for the sentence you've already received. And on that issue, what's the government's explanation of why, if you're right, and the Rule 32 revocation hearing has nothing to do with the length, why does the revocation hearing refer to your ability to make mitigation statements? Again, I would point this court back to the Morrissey and Morrissey's analysis. The text of the rule, the last thing under the revocation hearing is that the defendant has a right to make a statement in mitigation, put evidence on in mitigation. What would be the relevance of that to the violation inquiry? Although, while it is there and it does relate to the sentencing stage, there are two parts through 32.1 discusses the revocation hearing, and Rule 32 discusses the sentencing and judgments. And nothing in Rule 32.1 states that there should be the two parts that require something more during the revocation sentencing hearing than at the regular sentencing hearing. Indeed, the Eighth Circuit Embassy had a substantially similar question before it. It didn't go well into detail on the discussion of its ruling, but it found harmless error in terms of the lack of Rule 32.1 balancing test as to finding the revocation, but then it stated to the extent that this record considered that hearsay for the sentencing stage, that was not an error. That just begs the question of whether it is a sentencing or it's just the revocation. And the way Rule 32 is written when it says revocation hearing and then talks about mitigation, it seems to me a natural reading would be you get sentenced. The sentence was imposed. Now we're just talking about revoking supervised release. For how long? That's not a new sentencing. That's just the revocation hearing. Perhaps that's true. It's the consideration of like how long that sentence should be is the consideration then. Thank you, Your Honor. If I may, I'd like to just pick up on that last point right away. So the government would have the court follow Ruby, and respectfully, there's two reasons we think Ruby is wrongly decided. One is Your Honor's point. Ruby does not talk about the plain text in terms of mitigation. It does not talk about the plain text in terms of the structure and the heading. This is what Combs, the Fourth Circuit, does in 2022. Second, and this is also one of the footnotes to Combs' notes, Ruby assumes that sentencing, revocation sentencing, and regular sentencing after a trial are the same thing. They're not. And Your Honor has pointed out a number of reasons. I would say on top of that, there's this argument in the background of why are there more procedural rights here than there would be at quote-unquote regular sentencing. Our view is that that's not unreasonable when you have a trial with exponentially higher procedural rights for a defendant, and then you have a revocation proceedings where it's barely a confrontation right where the balance is good cause and reliability. And so there's definitely a way where this can be read coherently with the plain text and the structure of the rule, and that's how we would ask the court to read it. Counsel, we've just been talking with you and the government about the merits of the argument, but the government says that we're on plain error on this point, that it should be plain error. Respectfully, we disagree, and I left the sites at my desk. I can get them for Your Honor. Please feel free, but, you know, I did look at the parts of the transcript. And the specific objection that was made, and it would be helpful for you to talk about why it's covered, because it seems quite general, quite brief, and it really doesn't refer to confrontation other than referring back to the hearing that had been several months earlier. So why was that enough to preserve this objection? That's enough because this court has said under Serrano-Rios that we don't require exquisite precision. This had been the issue in this revocation proceeding from the very get-go. Counsel? You're absolutely, we don't require exquisite precision, but I think the standard is really, was there enough for the district court to understand the nature of the objection? So what I'm trying to ask you to focus on is when what counsel says is, you know, we preserve, continue our objection to the confrontation clause issues that we raised at the hearing, why isn't that just a reference back to what had happened two months earlier? Why is that enough to put the district court on notice that they're making an objection now on an open issue in this circuit? You know, why was that enough, those specific words? It was enough because the district court had been dealing with this issue for hours at a prior hearing, and there was never really any, there was never any really doubt, and the district court certainly didn't express any doubt as to what the objection was about. The counsel has been consistently making this objection. She incorporated her prior statements, and then she reiterated at the end of the same hearing. Right, but again, let me just try this a different way. This is a quote. Counsel said we renew our objections as to the confrontation clause and hearsay that occurred during the hearing. Why is that enough to make the objection at the sentencing proceeding that was about to happen? That's my question. Opposition, the reference is enough. I don't know how else to, and I'm sorry if I'm not getting Judge Rickleman. Just so I understand what happened. The objected to testimony, the hearsay testimony, right, the hearsay testimony. Correct. That's the only testimony that's the subject of an objection. That was given only at the prior hearing, correct?  And so when you renew the objection, I guess is your position, that was saying you can't rely on it in this hearing. That was the idea? Correct. That's why you're renewing it. The words that counsel used and she reiterated at the end were enough to put the court on notice. And they didn't put that witness on again at the second hearing. It was just already in the record to be relied on, so the idea of renewing it for this hearing is to say you can't use it here either. That's at least how I understand what you're saying.  And had the district court not split this into two parts, this would have been one same hearing. Additionally, there literally were no other objections at that prior hearing other than the hearsay exceptions that are at issue. So our position is that that was enough. Thank you. Thank you. Thank you.